UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:23-cr-00349 JAR ) |
| MATTHEW OLINGER, | ) ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Matthew Olinger, represented by defense counsel William Goldstein, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the Information, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's wire fraud scheme described in the Information, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the United States will request a sentence within the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).

The defendant also agrees, pursuant to the guilty plea to Count I, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: a money judgment equivalent to the amount of any and all funds obtained as a result of the defendant's wire fraud offense.

## 3. ELEMENTS:

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant voluntarily and intentionally devised or participated in the scheme described in the Information to obtain money by means of material false representations or promises;

**Two**, the defendant did so with intent to defraud; and

**Three**, the defendant caused to be used an interstate wire communication, that is an interstate, electronic communication to B.C.S. requesting $38,712.00 that the Defendant falsely represented would be spent on a "seed tender."

2

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Defendant **MATTHEW OLINGER** resided within the District of Kansas and was employed by B.C.S. A subsidiary of B.C., which was a multinational pharmaceutical and biotechnology company, B.C.S was a crop science company based in the Eastern District of Missouri. B.C.S. offered fungicides, harvest aids, herbicides, insecticides, traits, seed, seed treatments, and weed management products to customers.

The Defendant was employed by B.C.S. as an Area Business Manager. As an Area Business Manager for B.C.S., the Defendant's job responsibilities included managing a team of approximately ten field sales representatives. The field sales representatives who worked for the Defendant managed the relationships with B.C.S.'s "seedsmen." The B.C.S. seedsmen were tasked with selling B.C.S.'s seeds to regional customers. To promote seed sales to regional customers, Area Business Managers at B.C.S. (including the Defendant) were permitted to use B.C.S. funds to help B.C.S.'s seedsmen purchase certain agricultural equipment. To use B.C.S funds in such a way, Area Business Managers (like the Defendant) had to submit detailed funding requests for the agricultural equipment purchased for seedsmen. Area Business Managers were also required to submit receipts for any such purchases made for or by the seedsmen.

As an Area Business Manager for B.C.S., the Defendant also had a corporate credit card that he was permitted to use for official company expenditures and company travel expenses. According to B.C.S.'s written policies, to which the Defendant agreed to abide, the Defendant was

3

prohibited from using the corporate credit card for personal expenses. In addition, B.C.S.'s written policies required the Defendant to submit a receipt for any expense over $50.00 made on his corporate credit card.

Beginning by at least on or about May 3, 2014, and continuing through at least on or about March 24, 2022, in the Eastern District of Missouri, and elsewhere, the Defendant, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud B.C.S. and to obtain money and property from B.C.S. by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

It was part of the scheme and artifice to defraud that, on hundreds of occasions, the Defendant used his corporate credit card for purely personal expenses. Despite knowing that he was not allowed to use his B.C.S. corporate credit card for personal expenses, the Defendant used the card to pay for family meals, vacations, apparel, boating expenses, and personal entertainment. When the Defendant used his B.C.S. corporate credit card for purely personal expenses, he would often electronically submit substantially (via interstate wire transmissions) altered or completely fake receipts to make his purchases appear legitimate and work-related. In total, the Defendant racked up at least $180,000 in charges on his corporate credit card that were not in any way connected with his employment at B.C.S.

It was further part of the scheme and artifice to defraud that the Defendant misappropriated $100,000 of B.C.S.'s money to help a seedsman purchase a 2022 Cobalt R35 boat and a Heritage trailer. Because of the Defendant's position as an Area Business Manager, he had limited access to B.C.S.'s money to help B.C.S.'s seedsmen purchase certain agricultural equipment. The Defendant used such access to obtain the misappropriated $100,000—not for any authorized

4

business purpose—but to help a seedsman purchase the 2022 Cobalt R35 boat and a Heritage trailer.

It was further part of the scheme and artifice to defraud that the Defendant misappropriated the $100,000 by submitting three separate funding requests to B.C.S. In those three funding requests that the Defendant created and sent to B.C.S., the Defendant affirmatively misrepresented the purpose of the $100,000. Indeed, the Defendant represented that the $100,000 would go towards a "seed tender" and "seed equipment," which the Defendant was allowed to use B.C.S. funds to purchase for a seedsman. In truth and fact, however, the Defendant did not use the $100,000 to purchase a seed tender or seed equipment. Instead, the Defendant provided the $100,000 to a seedsman so that the seedsman could purchase the 2022 Cobalt R35 boat and a Heritage trailer.

It was further part of the scheme and artifice to defraud that, on or about February 22, 2022, the Defendant authorized his employee (a field sales representative) to execute a contract with a B.C.S. seedsman (T.K.). According to the contract, T.K. (the B.C.S. seedsman) was to be paid a total of $750,000 for the 2022 Cobalt R35 boat. More specifically, the Defendant planned to pay T.K. $75,000—in misappropriated B.C.S. funds—every year for a total of ten years to cover the total cost of the 2022 Cobalt R35 boat and any possible expenses associated with the use or ownership of the boat.

It was further part of the scheme and artifice to defraud that, on or about February 23, 2022, T.K. (the B.C.S. seedsman) purchased the 2022 Cobalt R35 boat and a Heritage trailer. Before this scheme was discovered and thwarted by B.C.S., the Defendant provided T.K. with a total of $100,000 in misappropriated B.C.S. funds.

Specifically, on or about December 23, 2021, within the Eastern District of Missouri, and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud, the Defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit an interstate, electronic communication to B.C.S. requesting $38,712.00 that the Defendant falsely represented would be spent on a "seed tender."

The parties agree that the loss caused by the defendant's scheme to defraud B.C.S. is approximately $280,000.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

### 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** As to Count 1, the parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply as to Count 1:

The parties agree that 12 levels should be added under Section 2B1.1(b)(1)(F) because the loss exceeds $250,000, but does not exceed $550,000. By executing the scheme to defraud as described above, the Defendant defrauded B.C.S. out of at least $280,000.00.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that 2 levels should be added under Section 3B1.3 because the defendant abused a position of private trust.

c. The parties have no further agreement regarding any other adjustments.

**d. Estimated Total Offense Level:** The parties estimate that the total offense level is 18. If the presentence investigation report determines a different total offense level, the parties are permitted to object to or accept any enhancements or reductions in the presentence investigation report.

7

  **e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

  **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

  **(2) Sentencing Issues:** In the event the Court accepts the plea, and after determining the applicable Sentencing Guidelines range, sentences the defendant within or below

8

that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, and sentences the defendant within or above the applicable sentencing guideline range found by the Court.

**f. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**g. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

d. **Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision**: The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss determined by the sentencing court, including all relevant

conduct loss. The defendant agrees to provide full restitution in the amount of the loss caused by the Defendant to all victims of all charges in the Information.

    **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

    The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of the loss found by the district court. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including

but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**:

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. **CONSEQUENCES OF POST-PLEA MISCONDUCT**:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

13

option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

| | |
|---|---|
| 7-6-2023<br>Date | _____<br>DEREK J. WISEMAN<br>Assistant United States Attorney |
| 7/6/2023<br>Date | _____<br>MATTHEW OLINGER<br>Defendant |
| 7/6/23<br>Date | _____<br>WILLIAM GOLDSTEIN<br>Attorney for Defendant |

14